UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSISSIPPI LIME COMPANY, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Plaintiff, ) | |
| Counterclaim-Defendant, ) | |
| ) | |
| vs. ) | Cause No. 4:03CV00170HEA |
| ) | |
| MOLLERS NORTH AMERICA, INC., ) | |
| ) | |
| Defendant, ) | |
| Counterclaim-Plaintiff. ) | |

**FIRST AMENDED COUNTERCLAIM OF
DEFENDANT MOLLERS NORTH AMERICA, INC.**

Comes now Mollers North America, Inc. ("MNA"), as Counter-Plaintiff, and for its First Amended Counterclaim against Mississippi Lime Company ("ML"), Counter-Defendant, states as follows:

**COUNT I - BREACH OF CONTRACT**

1.  MNA is a corporation incorporated under the laws of the State of Delaware with its principal and sole place of business located in Grand Rapids, Michigan.

2.  Upon information and belief, ML is a corporation incorporated under the laws of the State of Missouri with its principal place of business located in the State of Illinois.

3.  Jurisdiction of this matter is vested in this Court under 28 U.S.C. §1332 as this matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (c) because a substantial part of the events giving rising to MNA's claim occurred in Ste. Genevieve County, Missouri which lies within the Eastern District of Missouri.

1063066.1

5.  MNA entered into a Contract with ML in May, 2001 (the "Contract") for the purchase and sale of certain equipment for bagging and palletizing a product ("Packaging Equipment") produced by ML.  A true copy of the Contract is attached to the Complaint as Exhibit 1 and is incorporated by reference herein.

6.  MNA has performed all of its obligations under the Contract and satisfied all conditions precedent to payment under the terms of the Contract.

7.  To date, ML has paid MNA the sum of $856,580.00 pursuant to the terms of the Contract.  There is currently due and owing by ML to MNA the additional sum of $214,420 under the terms of the Contract.  This amount has been due and owing since April 14, 2003.

8.  Despite demand for payment from MNA, ML has failed and refused to pay MNA the additional sums due and owing pursuant to the terms of the Contract.

WHEREFORE, MNA prays that the Court enter judgment against ML for the sum of $214,420, plus prejudgment interest at the legal rate of 9% from and after May 14, 2003, plus its costs and expenses incurred herein, and for such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT II - ACTION ON ACCOUNT

9.  MNA restates and realleges paragraphs 1 through and including 5 of this Counterclaim as and for paragraph 9 hereof.

10. In 2002, at the special instance and request of ML, MNA provided goods and services to ML in connection with ML's operation of its Packaging Equipment which ML purchased from MNA.  The goods and services in issue here were not covered by MNA's warranty given in connection with the sale of the Packaging Equipment.

11. In addition to the non-warranty goods and services provided by MNA to ML, MNA also retrofitted ML's hopper with air cushions at the special instance and request of ML. Such additional work was outside of and in addition to the work and services provided for in the Contract.

12. There is currently due and owing from ML to MNA the sum of $159,687.68 for the goods and services provided by MNA to ML as described hereinabove. The sum charged by MNA for these goods and services is a reasonable amount.

13. Despite MNA's various demand for payment on or about May 29, 2002 (for $33,942.72), August 12, 2002 (for $13,403.61), and May 7, 2003 (for $112,785.35) ML has failed and refused to pay MNA for the sums owing as set forth hereinabove.

WHEREFORE, MNA prays that the Court enter judgment against ML for the sum of $33,942.72, plus prejudgment interest at the legal rate of 9% from and after June 28, 2002; $13,403.61, plus prejudgment interest at the legal rate of 9% from and after September 11, 2002; and $112,785.35, plus prejudgment interest at the legal rate of 9% from and after June 6, 2003, plus its costs and expenses incurred herein, and for such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT III - QUANTUM MERIT

14. MNA restates and realleges paragraphs 1 through 5 of this Counterclaim as and for paragraph 14 hereof.

15. MNA provided goods and services to ML in connection with ML's operation of its Packaging Equipment, including among other things, retrofitting ML's hoppers with air cushions.

16. ML accepted MNA's provision of the goods and services as described herein and in equity and good conscience should be required to pay for same.

17. The reasonable value of the goods and services provided by MNA to ML as described herein is $159,687.68.

18. Despite demand upon ML by MNA on various dates as set forth in paragraph 13 above, ML has failed and refused to pay for the goods and services as described herein.

WHEREFORE, MNA prays that the Court enter judgment against ML for the sum of $33,942.72, plus prejudgment interest at the legal rate of 9% from and after June 28, 2002; $13,403.61, plus prejudgment interest at the legal rate of 9% from and after September 11, 2002; and $112,785.35, plus prejudgment interest at the legal rate of 9% from and after June 6, 2003, plus its costs and expenses incurred herein, and for such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT IV - FRAUD

19. MNA restates and realleges paragraphs 1 through 5 of this Counterclaim as and for paragraph 19 hereof.

20. In connection with the negotiations leading up to the execution of the Contract, ML requested MNA to guarantee specific bagging rates with respect to the products that ML intended to bag with the Packaging Equipment to be purchased from MNA. MNA requested that ML provide it with samples of the product that the Packaging Equipment was to pack so that MNA could determine the rate at which its equipment could bag the products in question and whether MNA could give the bagging rate guarantee requested by ML.

21. Prior to the execution of the Contract, ML provided MNA the product samples MNA requested and ML represented to MNA at that time that the product MNA's Packaging

Equipment would be bagging would have the product characteristics of the product samples ML provided to MNA for the purpose of testing the capacity of MNA's equipment to bag such products. The representations referred to in this paragraph were made at least by Randy Griffard, ML's Senior Process Engineer, to John Hutchison of MNA on numerous occasions, including at the time of ML's visit to MNA's plant in Grand Rapids, Michigan on or about February 8, 2001, and at ML's plant in Ste. Genevieve, Missouri between February 26, 2001 and March 6, 2001. ML further omitted and failed to make material disclosures regarding the product characteristics that it was under a duty to disclose to MNA, including the following material omissions:

(a) that the product to be bagged would be transported pneumatically more than 1100 feet to the packhouse;

(b) that material variations in bulk density occurred on an almost hourly basis;

(c) that ML did not know what product handling characteristics the products to be bagged would have as a result of the new conveyance and bagging facilities that were then under construction for the Central Packaging Plant;

(d) that there were very significant differences in densification properties of the hydrated lime products from the PCC products; and,

(e) for approximately 45 years, ML had an ongoing problem of being able to package 50 pounds of one of the products to be bagged by the Packaging Equipment (*i.e.*, milled PCC) into a bag that was small enough to fit on a standard 40 x 48 pallet which was the size of the pallet that ML required to be used in the new Central Packaging Plant.

22. ML's representation that the product samples it provided to MNA to test had the same product characteristics as the product to be bagged by the Packaging Equipment was false.

23. ML's representation regarding the product characteristics, and its omissions as set forth above in paragraph 21, were material in that in order to guarantee specified bagging rates, MNA had to test a product with the product characteristics of the product to be bagged by the Packaging Equipment and the omitted material information materially and substantially affected MNA's giving of the performance guarantees in the contract. Without a true sample accurately reflecting such product characteristics, MNA could not and would not have given a guarantee of the specific bagging rates as requested by ML. Had the material information that ML omitted to give to MNA in fact been given to MNA, the specific bagging rates requested by ML would not have been given.

24. ML made these representations regarding the product characteristics, and ML failed to make the disclosures set forth above in paragraph 21, intending that MNA rely upon such representations and omissions in entering into the Contract and in giving ML the performance guarantees that ML wanted.

25. MNA reasonably relied upon ML's representations regarding the product characteristics, and the material omissions referred to above in paragraph 21, in entering into the Contract and giving the performance guarantees. ML was the only party that had the knowledge and information regarding the product characteristics of the products it intended to be bagged by the Packaging Equipment and it was the only party that had knowledge of the omitted material facts as set forth above in paragraph 21.

26. ML had a significant financial and business interest in inducing MNA to enter into the Contract and to give the performance guarantees.

27. ML's representations regarding the product characteristics were false. At such time MNA was unaware of the falsity of the representations and has only learned of the falsity of

the representations through experience with the product actually being bagged by the Packaging Equipment after the Contract was executed and placed into operation at ML's plant. MNA also learned of the material omissions only after the Contract was executed and placed into operation at ML's plant.

28. Upon information and belief, at the time of making the representations regarding the product characteristics, ML knew or should have known, that such representations were false, or in the alternative, ML did not know whether these representations were true or false.

29. ML made these representations to MNA, and failed to disclose the material facts set forth above in paragraph 21, for the purpose of deceiving MNA and inducing it to enter into the Contract and giving the performance guarantees regarding bagging rates.

30. As a direct result of MNA's reliance on ML's representations and material omissions, MNA has suffered damages, including those previously set forth herein.

31. In making its representations to MNA, and its material omissions, ML acted out of its own financial self-interest and in a manner that reflects evil motive and reckless indifference to the rights of MNA.

WHEREFORE, Counterclaim Plaintiff, Mollers North America, Inc., prays that this Court enter judgment in favor of Counterclaim Plaintiff, Mollers North America, Inc., for actual and punitive damages to plaintiff in a fair and reasonable amount to be proven at trial, but in no event less than $1.6 million, less the amount already paid by ML as set forth above in paragraph 7 hereof, plus its attorneys' fees, costs, and expenses incurred in connection with this matter, and such other relief as this Court deems just and proper.

## COUNT V - NEGLIGENT MISREPRESENTATION

32. MNA restates and realleges paragraphs 1 through 5, and 20 through 27, of this Counterclaim as and for paragraph 32 hereof.

33. In representing prior to the execution of the Contract that the product samples furnished to MNA for testing had the product characteristics of the product to be bagged, and in omitting the material facts set forth in paragraph 21, ML acted in the course of and in furtherance of its business operations.

34. ML, in making these representations and material omissions, failed to exercise reasonable care and, as a result, the representations made to MNA were false and the factual omissions set forth in paragraph 21 were materially misleading to MNA.

35. ML intentionally made these representations, and intentionally failed to disclose the factual omissions set forth in paragraph 21, specifically for the guidance of MNA as part of the business dealings and transactions that led to the execution of the Contract and MNA's acceptance of the performance guarantees on product bagging rates.

36. MNA justifiably relied upon ML's representations and omissions in entering into the Contract and in accepting the bagging rate performance guarantees set forth therein.

37. As a direct result of MNA's reliance on ML's representations and omissions, MNA has suffered damages, including those previously set forth hereinabove.

WHEREFORE, Counterclaim Plaintiff, Mollers North America, Inc., prays that this Court enter judgment in favor of Counterclaim Plaintiff, Mollers North America, Inc., for damages to plaintiff in a fair and reasonable amount to be proven at trial, but in no event less than $1.6 million, less the amount already paid by ML as set forth above in paragraph 7 hereof,

plus its attorneys' fees, costs, and expenses incurred in connection with this matter, and such other relief as this Court deems just and proper.

### COUNT VI - QUANTUM MERUIT

38. MNA restates and realleges the paragraphs 1 through 5, and paragraphs 20 through 31, as and for paragraph 38 hereof.

39. Because MNA was fraudulently induced to enter into the Contract, such Contract is null and void at the option of MNA.

40. MNA provided goods and services to ML in connection with its delivery of the Packaging Equipment to ML, and its provision of services and goods after delivery of the Packaging Equipment in an attempt to improve its performance in view of the changed characteristics of the product being bagged from those characteristics ML represented the bagged product would have.

41. ML accepted MNA's provision of the goods and services described herein and in equity and good conscience should be required to pay the reasonable value of same.

42. The reasonable value of the goods and services provided to ML as described herein is $1.6 million.

WHEREFORE, Counterclaim Plaintiff, Mollers North America, Inc., prays that this Court enter judgment in favor of Counterclaim Plaintiff, Mollers North America, Inc., for damages to plaintiff in a fair and reasonable amount to be proven at trial, but in no event less than $1.6 million, less the amount previously paid by ML as set forth in paragraph 7 hereof, plus its attorneys' fees, costs, and expenses incurred in connection with this matter, and such other relief as this Court deems just and proper.

                                    **LEWIS, RICE & FINGERSH, L.C.**

                                  By:        /s/Mark T. Keaney
                                         Mark T. Keaney,   #3530
                                           500 North Broadway
                                           Suite 2000
                                           St. Louis, Missouri  63102
                                           (314) 444-7600
                                           (314) 612-7705 (facsimile)

                                           Attorneys for Defendant/Counterclaim
                                           Plaintiff Mollers North America, Inc.

                                  **<u>CERTIFICATE OF SERVICE</u>**

      The undersigned hereby certifies that on this 6th day of February, 2004, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following persons:

Michael H. Kauffman
William M. Corrigan, Jr., Esq.
Armstrong Teasdale LLP
Suite 2600
One Metropolitan Square
St. Louis, Missouri  63102-2740

                                                   /s/Mark T. Keaney